UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN DOAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NIRMAL SINGH, et. al., <br><br> Defendants. | Case No. 1:13-cv-00531-LJO-SMS <br><br> **ORDER DISMISSING REQUEST FOR ATTORNEY FEES** <br><br> (Doc. 36) |

**PRELIMINARY STATEMENT TO THE PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Dianne Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action.

**BACKGROUND**

On August 29, 2013, this Court granted motions to dismiss the First Amended Complaint of Plaintiffs Kevin and Pauline Doan ("Plaintiffs"). Doc. 34. Now before the Court is a motion for attorney fees filed by Defendants Nirmal Singh, Paul Raj Chadha, and Chadha Construction ("Defendants") on the grounds that they are "part[ies] prevailing on the contract" as defined in the applicable California attorneys' fee statute, California Civil Code §1717. Doc. 36.

1

A more detailed summary of the procedural history of this litigation, including other cases in state court and federal district court, appears in the Court's August 29 order granting the motions to dismiss the FAC. Here, the Court begins with Plaintiffs' complaint in this case, filed on April 13, 2013. Doc. 1. While the Court acknowledged the difficulty in parsing "a litany of factual allegations that are confusing and disorganized at best," it determined that Plaintiffs had attempted to allege a single federal claim (a violation of RICO) as well as a variety of California claims, including breach of contract.[1] Ruling on the motions to dismiss, the Court found, *inter alia,* that Plaintiffs had failed to allege that they were parties to, or third party beneficiaries of, any contract with Defendants Chadha and Chadha Construction, and it dismissed without prejudice the claims against these two defendants for breach of contract and for violation of the implied covenant of good faith and fair dealing. The Court also dismissed the RICO claim, without prejudice, for failure to plead all necessary elements.

Plaintiffs filed their FAC on July 15, 2013. They re-alleged the RICO claim in greater detail, and also re-alleged two contract-related claims against Defendants Singh, Chadha, Chadha Construction, and "Mid-Valley." The FAC referred to a handful of contracts, as follows:

The first of these was a May 2011 contract or "joint venture agreement" between Plaintiffs, Singh, and Watsonville Inc. for the purchase of land in Watsonville and its development into an AM/PM. Plaintiffs have attached this agreement as Exhibit 56 to their complaint. The Court notes that Harpreet Dhaliwal is also a party. The Court also notes the following attorneys' fee provision: "If litigation is required to resolve or interpret any portion of this Funding and Joint Venture Agreement, then the prevailing party shall be entitled to reasonable and prudent attorney's fees and costs." Doc 24-2, page 9.

Second, there was a one-year promissory note secured by deeds of trust dated May 2011, by which borrowers Singh and Dhaliwal promised repayment to Plaintiffs ("Promissory Note").

---

[1] Altogether, Plaintiffs' claims were for : (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) money had and received; (5) conversion of funds; (6) fraud; (7) negligent misrepresentation; (8) concealment; (9) false promise; (10) Cal. Corp. Code § 25110; (11) failure to issue share certificates; (12) California securities fraud; (13) involuntary dissolution; (14) enforcement of the right to inspect books and records; (15) California securities penalties; (16) conspiracy; and (17) RICO violations.

Plaintiffs have attached this as Exhibit 59 to their complaint. The attorneys' fee provision is unilateral, providing only for payment of fees by the borrowers (Singh and Dhaliwal) to the Doans. Doc 24-5, page 6.

Third, Plaintiffs stated that the joint venture agreement made them third-party beneficiaries to two contracts made by Watsonville, Inc. Of these, only one is relevant here—a construction contract between Watsonville Inc. and Defendants Chadha and Chadha Construction. Plaintiffs have attached this agreement as Exhibit 28. It provides, "In the event the parties become involved in litigation ... with each other arising out [of] this Agreement or other performance thereof ... the prevailing party shall be fully compensated for the cost of its participation in such proceedings including the cost incurred for attorney's fees ..."

Fourth, on August 1, 2011 Plaintiffs contracted with Singh for purchase of shares of a company which holds an AM/PM on Hatch Road in Ceres, CA ("General Partnership agreement"). Plaintiffs have attached this agreement as Exhibit 58 to their complaint. It contains the same attorneys' fee provision as the May 2011 joint venture agreement cited above. Doc. 24-4, page 9.

Plaintiffs alleged that Singh breached the August 2011 partnership agreement. Plaintiffs also referred to a breach by Singh, Chadha, and Chadha Construction of "the agreement as to the Watsonville Arco AM/PM," but it is not exactly clear which agreement Plaintiffs have in mind, since they identified three such agreements. From context, it appears that Plaintiffs meant to hold all three defendants—Singh, Chadha, and Chadha Construction—accountable for both the May 2011 joint venture agreement between Plaintiffs and Singh as well as for the construction contract between Watsonville, Chadha, and Chadha Construction. (For example, Plaintiffs refer to a promise made by Singh to Plaintiffs to "obtain a $2,800,000.00 permanent take out loan," yet they name all three of the moving Defendants in connection with the breach of this promise.)

The common theme among these allegations is that they refer only in passing to terms of specific contracts; otherwise, they essentially duplicate the alleged RICO violations. For example, in violating the August 2011 partnership agreement, Singh allegedly failed to make monthly payments of $15,000 to Plaintiffs as specified in that agreement, and also committed a variety of closely related, generally fraudulent acts: he embezzled from the corporate accounts, he obtained

3

fraudulent lines of credit, he used the money to pay "personal and/or other business expenses," he shut down bank accounts to prevent Plaintiffs from accessing their money, etc. FAC at ¶120. The same is true of the alleged contractual violations by Singh, Chadha, and Chadha Construction. For example, the FAC alleges the following contractual violations by these Defendants:

- "creating a false Chadha Construction Inc. and used it interchangeably with Chadha Construction to receive money Defendant Singh and associates were not entitled to."
- "conspiring with the contractor Paul Raj and Chadha Construction to steal money,"
- "conspiring with Defendant Nachhattar and Susana to loot the assets of the company"
- "conspiring with Defendant Nachhattar and Susana to give a false and inaccurate statement of the true ownership of the companies,"
- "conspiring with Defendants Gurdev, Ranjeet, AASRA and JPH to steal money"

Likewise, racketeering themes are again apparent in the claim for breach of the implied covenant of good faith and fair dealing:

- "Defendants refused to complete the construction unless Plaintiffs gives [sic] them additional funds and then intentionally stop making loan payments after fraudulently misappropriating funds allocated for the construction of the Watsonville Arco AM PM to construct Defendants' Ripon AM PM ..."
- "Defendants paid personal and/or other business expenses not related to the Hatch AM PM, stole and withdraw [sic] funds without the knowledge or consent of Plaintiffs the Doan [sic], and borrowed, stole or lent money ..."
- "Defendant Singh conspired with Paul Raj and/or Chadha Construction (DBA and/or Inc.) to over-charge for construction by at least $500,000.00 on the construction of the Watsonville AM PM, stole funds from the Watsonville Inc.'s accounts to build the Ripon AM PM, delayed the construction beyond any reasonable time period ..."
- "Defendants Paul Raj and/or Chadha Construction conspired with Defendant Singh submitted false documentation and place a false mechanic lien [sic] ..."

In its order on the motions to dismiss the FAC, the Court focused only on one sufficient cause for dismissal: it dismissed the RICO claim with prejudice, then dismissed the remainder of the complaint for lack of federal subject matter jurisdiction. In so doing, the Court did not address the contract claims on the merits. *See also* docs. 37, 39 (clarifying this point).

## **DISCUSSION**

Federal courts apply state law in determining whether to award attorneys' fees in an action on a contract. *Ford v. Baroff,* 105 F.3d 439, 442 (9th Cir.1997). Here, the relevant provision is California Civil Code Section 1717, which generally allows attorneys' fees to the "party prevailing on the contract." Cal. Civ.Code § 1717. However, "[b]efore this Court may reach whether Defendants are 'prevailing parties' ... this Court must determine whether it has jurisdiction to

4

evaluate a request for an award of attorneys' fees at all." *Skaaning v. Sorensen*, 679 F. Supp. 2d 1220, 1222-23 (D. Haw. 2010).

Here, the Court lacks such jurisdiction. The Court has twice dismissed all federal claims from Plaintiffs' pleadings, rendering these without any grounds for federal subject matter jurisdiction and ultimately requiring dismissal of the entire case. The Court lacks jurisdiction because, as the Ninth Circuit has explained, "[a] court that lacks jurisdiction at the outset of a case lacks the authority to award attorneys' fees." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 837 (9th Cir. 2007).[2] This position is well-established in this circuit. In *Latch v. United States*, the Ninth Circuit reversed the district court's fee award to plaintiffs arising from their tax abatement suit against the United States, explaining that "since the district court lacked jurisdiction to entertain the tax claim, it had no authority to award attorney's fees." *Latch v. United States*, 842 F.2d 1031, 1033 (9th Cir. 1988); *see also Smith v. Brady,* 972 F.2d 1095, 1097 (9th Cir.1992) (same).[3] In *Branson v. Nott*, the Ninth Circuit held that because the district court lacked subject matter jurisdiction over the civil rights complaint (a collateral attack on prior state court ruling), defendants could not request attorneys' fees under 42 U.S.C. § 1988. *Branson v. Nott,* 62 F.3d 287, 292–93 (9th Cir.1995). Finally, in *In re Knight*, because the lower court had dismissed the ERISA claims as outside its bankruptcy jurisdiction, the Ninth Circuit held that "the court had no authority to apply the fee-shifting provision of ERISA." *In re Knight*, 207 F.3d 1115, 1117 (9th Cir. 2000). It based this finding on the observation that "the logic of *Branson* is broadly controlling." This broadly controlling logic implies that a court cannot apply a fee-shifting statute without jurisdiction to do so.

A seemingly contrary opinion, in which the Ninth Circuit upheld a fee award despite a dismissal of the action for lack of subject matter jurisdiction, may be distinguished on its facts. *See Kona Enterprises, Inc. v. Estate of Bishop,* 229 F.3d 877 (9th Cir.2000). In *Kona*, the district court

---

[2] No jurisdictional issue arises from the fact that Plaintiffs have appealed the dismissal of the FAC to the Ninth Circuit. *United States ex rel. Shutt v. Community Home & Health Care Servs., Inc.,* 550 F.3d 764, 766 (9th Cir.2008).

[3] The *Latch* court distinguished, approvingly, a tax court doctrine holding that a successful challenge to the court's jurisdiction (which derives from the Internal Revenue Code) creates jurisdiction "over any questions which necessarily revolve around the question of jurisdiction, including attorney fees." *Id.* at n.4 (quoting *Sanders v. C.I.R.*, 813 F.2d 859, 862 (7th Cir. 1987) (Reynolds, J., concurring)).

had dismissed the complaint on three separate occasions, but only the first and third dismissals were consistent with a lack of subject matter jurisdiction (lack of standing). The second dismissal, by contrast, ultimately had the effect of *curing* diversity jurisdiction. Thus, the Ninth Circuit relied in part on the observation that the district court had been "sitting in diversity." Here, by contrast, both this Court's dismissals rendered the case without subject matter jurisdiction. District courts which have considered *Skaff* have generally concurred that *Kona* should be limited to its facts in this way, if not disregarded entirely. *See Archer v. Silver State Helicopters, LLC*, 2007 WL 4258237 (S.D. Cal. Dec. 3, 2007), *Skaaning v. Sorensen*, 679 F. Supp. 2d 1220 (D. Haw. 2010) (*Kona* contradicted and failed to discuss controlling Ninth Circuit authority; misconstrued its own authorities; and has not been cited for this position in published Ninth Circuit cases); *cf. Lanphere Enterprises, Inc. v. Jiffy Lube Int'l, Inc.*, 2004 WL 6081541 (D. Or. Feb. 10, 2004) (pre-*Skaff*, accepting *Kona* as controlling, but misconstruing or omitting contrary Ninth Circuit authority).

## **CONCLUSION**

"Ordinarily, the appropriate disposition of a motion for attorneys' fees when the court lacked jurisdiction from the outset of an action is not denial of the motion ... but dismissal of the motion for lack of jurisdiction." *Skaff*, 506 F.3d 837 at n. 2. Because this Court lacks jurisdiction, Defendants' motion for attorneys' fees is not denied but is DISMISSED for lack of jurisdiction.

IT IS SO ORDERED.

Dated:   **October 17, 2013**              **/s/ Lawrence J. O'Neill**
                                                            UNITED STATES DISTRICT JUDGE